J-A11014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :             PENNSYLVANIA
                                      :

             v.                         :
                                      :
                                      :

KAMERON MICHAEL JAMES : 
OSBORNE                           :
                                      :   No. 844 WDA 2020
              Appellant

Appeal from the Judgment of Sentence Entered July 31, 2020
In the Court of Common Pleas of Warren County Criminal Division at
No(s): CP-62-CR-0000105-2020

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED: September 8, 2021**

Kameron Michael James Osborne appeals from the judgment of sentence imposed after he pleaded guilty to Rape by Forcible Compulsion and Endangering the Welfare of a Child ("EWOC").[1] Osborne claims that the court erred by denying his petitions to withdraw his guilty plea and challenges the discretionary aspects of his sentence. We affirm.

At the plea hearing, on June 25, 2020, Osborne agreed to the factual basis of the charges and said he understood the charges, the possible sentences, and that he would be required to register as a sex offender:

> THE COURT: All right. I am going to amend that charge, Mr. Osborne. So, you are charged, again, count one, with rape by forcible compulsion, first degree felony, under 18 Pa.C.S.A. [§] 3127(a)(1).

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1) and 4304(a)(1), respectively.

That offense is that you did engage in sexual intercourse by forcible compulsion. And, again, specifically, it is alleged that on or about February 17th, 2020, you did push the victim, B.O.,[2] onto the bed and did hold the victim down against the victim's will and force sexual intercourse with the victim. Do you understand this charge, sir?

[OSBORNE]: Yes.

THE COURT: And, do you understand the allegations against you?

[OSBORNE]: Yes.

THE COURT: This is a first-degree felony. So, the maximum penalties the Court can impose are 20 years['] incarceration and $25,000 fine. Do you understand that?

[OSBORNE]: Yes.

THE COURT: And, do you understand that any sentences the Court imposes at count one and count five, could be ordered to run consecutive to one another?

[OSBORNE]: Yes.

THE COURT: And do you understand that by pleading guilty to this count, you will be classified as a Tier III sexual offender, and your registration period as a sexual offender will be for the rest of your lifetime. Do you understand that sir?

[OSBORNE]: Yes.

THE COURT: And as to count one, rape by forcible compulsion, do you admit to that charge?

[OSBORNE]: Yes.

THE COURT: And, how do you plead?

[OSBORNE]: Guilty.

---

[2] B.O. and Osborne were married but separated at the time of the crime.

THE COURT: You are charged at count five with endangering the welfare of a child, a first[-]degree misdemeanor, filed under 18 Pa.C.S.A. [§] 4304(a)(1).

That offense is that you did being a parent, guardian, or other person supervising the welfare of a child under 18 years of age, knowingly endangered the welfare of the child by violating the duty of care, protection, or support.

And, specifically, it is alleged that on or about the same date, you did rape the child's mother in front of the child. Do you understand the charge of endangering the welfare of a child?

[OSBORNE]: Yes.

THE COURT: And do you understand that allegation against you?

[OSBORNE]: Yes.

THE COURT: As a first-degree misdemeanor, the maximum penalties the Court can impose are five years' incarceration and $10,000 fine. Do you understand those maximum penalties?

[OSBORNE]: Yes.

THE COURT: And as to count five, do you admit to that charge as it is written?

[OSBORNE]: Yes

THE COURT: And how do you plead?

[OSBORNE]: Guilty.

THE COURT: I accept that plea, if you will please enter it.

N.T., 6/25/2020, at 12-15.

Osborne also agreed that he was pleading guilty of his own free will and that he understood the rights he would forfeit by pleading guilty. *Id.* at 2-8, 10. He stated no one had made any promises to him regarding the sentence and that no one threatened him or used force or coercion to get him to plead

- 3 -

guilty. *Id.* at 10. He also agreed that he had sufficient time to discuss with counsel the facts of his case and the effects of the plea, including the maximum penalties. *Id.* at 11.

Before sentencing, on July 16, 2020, Osborne moved to withdraw his guilty plea. At a hearing on the motion, Osborne stated he wanted to withdraw his guilty plea because he did not "want to have to register under a sex offender for the next [*sic*] life." N.T., 7/28/2020, at 6-8. Osborne acknowledged that prior to pleading guilty, the court advised him he would have to register as a sex offender for his lifetime. N.T., 7/28/2020, at 8-9. The court denied the motion, noting Osborne did not claim his innocence or that he wanted to test the Commonwealth's case. *Id.* at 14. It concluded that seeking to withdraw the plea because he did not want to register as a sex offender, when he was made aware of the requirement at the plea, "with nothing to support his innocence, nothing to support any new evidence, just doesn't meet the burden for withdrawal." *Id.* at 15.

The court later sentenced Osborne, on July 31, 2020, and imposed maximum sentences on both convictions. For EWOC, it sentenced him to 30 to 60 months' incarceration, and for Rape by Forcible Compulsion, it imposed a consecutive sentence of ten to 20 years' incarceration.[3] The court also

_____

[3] At sentencing, Osborne disputed the offense gravity score used to determine the sentencing guidelines for the rape by forcible compulsion conviction. N.T., 7/31/2020, at 8. For purposes of the sentencing, the court used the lower range of 48 to 66 months. *Id.* at 8-9. The record does not contain information

*(Footnote Continued Next Page)*

imposed a mandatory three-year period of probation applicable to certain sexual offenses, pursuant to 42 Pa.C.S.A. § 9718.5(a).

At sentencing, the trial court explained its reasons for the sentence for the rape conviction:

> This sentence is outside the Sentencing Guidelines and is the maximum punishment possible for the following reasons.
>
> First and importantly, and unconscionably, you raped the victim in the presence of her child. You managed to take the most violent thing you can do to a woman, you made it worse by doing it in front of her child. That pain and suffering that she had to be going through in addition to her own pain and suffering, knowing a child is observing that assault is outrageous. Second, you threatened to physically harm her and your child during this brutal assault. And, third, while she was fighting, screaming, doing everything in her power to end your assault, you covered her mouth, you used increased force to perpetrate your rape until you finished.

*Id.* at 17-18.

It explained its sentence for the EWOC conviction as follows:

> This sentence is outside the guidelines and is the maximum sentence possible for the following reasons.
>
> First, your conduct is far beyond the conduct that [the] endangering the welfare of a child . . . statute is intended to prescribe, to punish you within the guidelines would be a miscarriage of justice.
>
> You had a child stand by and watch his mother get sexually assaulted while you threatened that child's life.

_____

regarding the sentencing range for the endangering the welfare of a child conviction. Regardless, there is no dispute that the sentencing it outside the Sentencing Guidelines.

> Second, the child is your own biological child, not some unrelated child that you were providing care for. This tells me you are a danger to any child you come across, let alone your own.

*Id.* at 16. The court also included the above reasons in the sentencing order.

Osborne's counsel filed a motion challenging the validity of the plea, a motion for reconsideration of sentence, and a motion to withdraw appearance. In the motion to reconsider the sentence, Osborne argued the court abused its discretion by imposing "such an extensive period of incarceration, and specifically by going outside the [S]entencing [G]uidelines." Motion for Reconsideration, filed Aug. 10, 2020, at ¶ 2. At a hearing, Osborne noted his lack of a prior record, questioned the court's statement that Osborne had threatened the child, and stated he believed the court weighed certain elements more than others. N.T.,9/4/2020, at 4.

In the motion challenging the validity of the plea, Osborne claimed he was pressured to enter the plea against his will, and, in *pro se* correspondence, stated counsel was ineffective based on a representation Osborne received from counsel. The trial court held a hearing, where it questioned counsel about his correspondence with Osborne. Counsel stated one communication did include "wrong" language regarding the possible sentence, but that later discussions clarified that there were no promises regarding the sentence:

> THE COURT: In his *pro se* motion on appeal, he seemed to indicate there is written correspondence where there was some type of guaranteed minimum sentence. I think, three to six years, something like that. I am assuming that's not going to pan out to be the situation, that you reviewed the

guidelines with him and he indicated on the record to file, there was no promises regarding sentence?

[Osborne Counsel]: Correct, your Honor. . . . There, I have had multiple correspondence with Mr. Osborne. And, before that particular plea, we spoke at length in person. And, I confirmed with Mr. Osborne the maximum sentence allowed by law and the sentencing guideline. And, that I hoped for a sentence, you know.

I did, the correspondence he is referring to is one I had sent previously. And that was, I, I did use the wrong language. But, I, when I spoke to him after that, I confirmed with him that, that there are no promises.

N.T., 9/4/2020, at 6-7. Counsel clarified that in a June 22, 2020 letter to Osborne, counsel explained the guidelines and predicted a minimum standard range from counsel's calculations. *Id.* at 8. He then "unfortunately[] used the language, if you take the deal, your minimum will be anywhere between four and six years." *Id.*

The trial court denied the motion challenging the validity of the plea, stating the record belied Osborne's claim that he was misled about the sentence and finding no manifest injustice. The court also denied the motion to reconsider the sentence. It granted counsel's motion to withdraw and appointed new counsel. Osborne filed a timely notice of appeal.

Osborne raises the following issues:

1. Did the trial court abuse its discretion in denying [Osborne's] motion to withdraw his guilty plea, made after entry of his plea but before sentencing, as he felt pressured into taking the plea and believes he did not do so with full knowledge of the potential consequences?

2. Did the trial court abuse its discretion in imposing the maximum possible sentence upon [Osborne], well above even the aggravated range of the sentencing guidelines,

- 7 -

particularly as he has no prior record, and the facts of the case do not warrant the imposition of that sentence.

Osborne's Br. at 8.

Osborne argues in his first issue that the court should have granted his motion to withdraw as Osborne felt pressured into entering his plea and lacked full knowledge of the consequences. He claims that he had concerns about the lifetime sex offender registration requirement and "felt differently about his chances from when he entered his plea if he took the case to trial." *Id.* at 11. He further argues that his trial counsel's communications indicated that he "will" receive a sentence in the standard range. He argues that, although counsel stated he corrected the statement, the resulting confusion "indicates that [Osborne] did not enter a knowing and intelligent plea with knowledge of the consequences at the time." *Id.* at 10-11. He states that the Commonwealth will not be prejudiced if he is permitted to withdraw the plea, as the witnesses remain available to testify and there are no questions about spoilation of evidence.

Osborne challenges two separate rulings – the order denying his pre-sentence motion to withdraw his guilty plea and the order denying his post-sentence motion to withdraw.[4] We will address each separately.

---

[4] In his Statement of Questions Involved, Osborne mentions only the pre-sentence motion to withdraw. However, the argument section of his brief discusses both the basis for the pre-sentence motion—the lifetime registration requirement—and the basis of the post-sentence motion—counsel's remarks on sentencing. This is a violation of Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). We will not find waiver in this instance because our appellate review is not materially hampered.

"A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion." ***Commonwealth v. Elia***, 83 A.3d 254, 261 (Pa.Super. 2013) (quoting ***Commonwealth v. Pardo***, 35 A.3d 1222, 1227 (Pa.Super. 2011)) (citing standard of review for pre-sentence motions); ***see also Commonwealth v. Kehr***, 180 A.3d 754, 757 (Pa.Super. 2018) (citation omitted) (citing standard of review for post-sentence motions).

"[A]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant . . . the withdrawal of a plea of guilty . . . and the substitution of a plea of not guilty." Pa.R.Crim.P. 591(A). However, there is no absolute right to withdraw a guilty plea. ***Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1291 (Pa. 2015). Trial courts have discretion in determining whether to grant a request to withdraw a plea. ***Id.*** at 1291-92. "[S]uch discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." ***Id.*** 1292. For example, it is not an abuse of discretion for the trial court to refuse a presentence motion to withdraw a guilty plea based on an implausible bare claim of innocence. ***Id.*** at 1292-93.[5]

_____

[5] ***See also Commonwealth v. Norton***, 201 A.3d 112, 121 (Pa. 2019) (finding no abuse of discretion in denying request to withdraw *nolo contendere*
*(Footnote Continued Next Page)*

Here, Osborne sought to withdraw his guilty plea before sentencing because he did not want to have to register for life as a sex offender. He did not claim he was innocent, much less put forward a plausible claim of innocence or identify a colorable claim of a flaw in the Commonwealth's case. Under these circumstances, we cannot say that the trial court abused its discretion in rejecting the request. Rather, it was well within the court's discretion to find that Osborne's dislike of the lifetime registration requirement—a requirement he stated he knew at the time of sentencing—did not constitute a fair and just reason to withdraw the plea.

"[P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices." *Commonwealth v. Kelly*, 5 A.3d 370, 377 (Pa.Super. 2010). A defendant who files a post-sentence motion to withdraw "must demonstrate that manifest injustice would result if the court were to deny [the motion]." *Id.* (citation omitted). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa.Super. 2003) (citation omitted).

The denial of Osborne's post-sentence motion to withdraw was not an abuse of discretion, either. Osborne has failed to show that his guilty plea was

---

plea based on bare claim of innocence, statement that defendant could not live with himself for taking the plea, and desire to test the Commonwealth's evidence at trial).

not knowing, intelligent, and voluntary. Counsel acknowledged that one of his letters included the "wrong" wording, but stated he clarified with Osborne prior to the plea hearing that there were no promises regarding the sentence. Further, at the plea hearing, Osborne stated he knew the maximum sentences that could be imposed for the convictions and that no promises had been made.

Osborne argues in his second issue that the trial court abused its discretion in exceeding the guidelines and imposing maximum sentences. He argues that although it is "certainly outside the norm that the child witnessed his mother's sexual assault, it cannot reasonably be said that the purpose of the sexual assault was to harm the child." Osborne's Br. at 13. He further stated that his use of force was an element of the crime, not an aggravating factor for sentencing purposes, and there was no allegation that he caused harm to the victim or used force "beyond the scope of other individuals who have committed the crime." *Id.* at 14. Osborne notes that the victim requested leniency and requested that Osborne have contact with his children. *Id.* at 15. He also points out he was 22 years old at the time of the crime, with no prior record, was cooperative with law enforcement, admitted to his actions, and believes an underlying mental health issue impacted his actions.

In this issue, Osborne challenges the discretion aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa.Super. 2014) (*en*

*banc*). To invoke this Court's jurisdiction over such a claim, an appellant must satisfy a four-part test. We must determine whether the appellant: (1) preserved the issue by raising it either at the time of sentencing or in a post-sentence motion; (2) filed a timely notice of appeal; (3) set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raised a substantial question for our review. ***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa.Super. 2013).

"If an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth does not object, the reviewing Court may overlook the omission if the presence or absence of a substantial question can easily be determined from the appellant's brief." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1017 (Pa.Super. 2003) (citation omitted).

Osborne raises two challenges to his sentence—the court erred in sentencing him to an unreasonable sentence that was outside of the Sentencing Guidelines and the court improperly relied on force, an element of Rape by Forcible Compulsion, as an aggravating factor.

Osborne preserved his claim that the outside-the-guidelines sentences were unreasonable by raising it in a post-sentence motion and filing a timely appeal. However, Osborne did not challenge the use of an element of the crime as an aggravating factor before the trial court and therefore waived the claim. ***See Commonwealth v. Reeves***, 778 A.2d 691, 692–693 (Pa.Super. 2001) (failing to raise the specific claim raised on appeal in post-sentence motion,

deprived the trial court of the opportunity to consider claim and thus the claim was waived on appeal).

Osborne did not include a Rule 2119(f) statement in his brief. However, this does not prevent our review, as the Commonwealth did not object to its absence, and we can determine whether a substantial question exists based on the brief. *See Anderson*, 830 A.2d at 1017. Osborne's remaining issue— whether the court erred in imposing a sentence above the guidelines without sufficient justification—raises a substantial question. *Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa.Super. 2014) (concluding claim that court-imposed sentence outside the standard range without stating adequate reasons presents a substantial question); *Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa.Super. 2002) (finding a claim the court imposed an unreasonable sentence outside the guidelines raises a substantial question).

We apply the following standard of review to discretionary sentencing issues:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (quoting *Commonwealth v. Mann*, 957 A.2d 746, 749 (Pa.Super. 2008)).

- 13 -

"If the court imposes a sentence outside of the [S]entencing [G]uidelines, it must provide a written statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing." **Commonwealth v. Walls**, 926 A.2d 957, 963 (Pa. 2007). The written statement requirement is met where the court set forth its reasoning on the record at the sentencing. **Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa.Super. 2008).

"[U]nder the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is 'unreasonable.'" **Walls**, 926 A.2d at 963 (citing 42 Pa.C.S.A. § 9781(c), (d)). The General Assembly has set forth four factors that an appellate court is to consider when determining whether a sentence is unreasonable:

> **(d) Review of record.**—In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Here, the trial court considered the pre-sentence report, the Sentencing Guidelines, and Osborne's lack of a prior record. It then stated on the record

J-A11014-21

its reasons for deviating from the guidelines for each count. N.T., 7/31/2020, at 16-18; Sentencing Order. It again summarized the reasons in its Rule 1925(a) opinion, including that his child witnessed the assault and Osborne's threats to harm the victim and child:

> At sentencing this court indicated on the record that it had fully considered the presentence report prepared and the [S]entencing [G]uidelines. The [c]ourt did take into consideration that [Osborne] lacked any prior record as set forth in the PSI. The court indicated that the sentence would be outside the guidelines and gave specific reasons for that on the record and in the written sentence order. First, and most importantly, [Osborne] raped the victim in the presence of their young child. The court indicated on the record that [Osbrone] managed to take the most violent and damaging act that can be perpetrated upon a woman and made it even more horrific for her by assaulting her in front of her child. Frankly, this circumstance alone justifies the imposition of the maximum sentence. In addition, the court indicated that the sentence was outside the guidelines due to [Osborne's] threats to harm the victim and her child if she continued to resist. Finally, [Osborne] used increasing force and covered the victim's mouth when she was screaming for [Osborne] to stop. The nature and circumstances of this case greatly outweighed other considerations including [Osborne's] lack of a prior record. This court can't imagine a defendant more in need of a lengthy period of incarceration and rehabilitative services than a man who would forcibly rape the mother of his child while threatening to physically harm both mother and child, *in front of the child*. This court can't begin to fathom the long lasting trauma and devastating emotional harm suffered by the victim.
>
> With respect to [the] sentence imposed for Endangering the Welfare of a Child, this court cited two factors for the imposition of a sentence outside of the guidelines. First, [Osborne's] actions in this matter were "so far beyond the type of conduct this offense is designed to punish that a sentence in the guidelines would be a miscarriage of justice." The court noted that the harm caused to the child

- 15 -

by witnessing the brutal sexual assault of the child's mother was "unfathomable." Second, the court indicated that the child was also the victim's child and to harm his own child in this manner indicates that he represented a grave danger to the community. The impact of [Osborne's] conduct upon the lives of both victims in this case is immeasurable. It outweighs all other considerations.

1925(a) Op. at 8-9 (emphasis in original).

The trial court did not abuse its discretion. The court considered the pre-sentence report, and all relevant factors, and provided more than adequate reasons for the sentence. We cannot say that, considering the nature and circumstances of the offense and the defendant, the opportunity for the sentencing court to observe the defendant and the PSI, the findings on which the court based the sentence, and the guidelines, that Osborne's sentence was unreasonable.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/08/2021